**UNITED STATES of America,
Plaintiff,**

v.

**PRODUCTS MARKETING, a Pennsylvania corporation, Franklin D. Ruskin, Sheldon G. Benston, Harry Yanowski, Albert Rosenfeld, Jerry Cooper, Lester Snyder, Lawrence Alper, Defendants.**

**Crim. A. No. 1614.**

United States District Court
D. Delaware.
March 7, 1968.

William J. Wier, Jr., Sp. Asst. U. S. Atty., Wilmington, Del., for plaintiff, United States.

Rodman Ward, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendant, Franklin D. Ruskin.

E. Dickinson Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for defendant, Sheldon G. Benston.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for defendant, Harry Yanowski.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant, Albert Rosenfeld.

Richard L. Sutton, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant, Lester Snyder.

Joseph H. Flanzer, of Flanzer & Isaacs, Wilmington, Del., for defendant, Lawrence Alper.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is a criminal case arising under Title 18, U.S.C. § 1341 wherein the various individual defendants and the single corporate defendant are charged with having conspired to use the United States Mails to defraud.[1] Motions to dismiss

---

1. Briefly, the specifications of the indictment allege that the defendants induced various persons to buy built-in home vacuum cleaning systems for approximately $800 on the express representation, inter alia, that the purchasers would receive a rebate of $100 for each "friend or acquaintance" referred to the defendants by the purchaser who, in turn, bought a built-in vacuum cleaning system from defendants. Even if no one recommended by a purchaser ultimately bought a vacuum cleaning system from defendants, the purchaser was guaranteed a payment of $300 so long as the defendants were able to "see" at least 20 persons referred by a purchaser.

Further, defendants obtained confession of judgment notes from purchasers, which notes, along with the underlying installment contracts were, without notice to or approval of the purchasers, sold to various financial institutions immediately after the cleaning systems were installed in the homes.

have been filed by defendants Ruskin, Benston, Yanowski, Rosenfeld and Snyder and the Government has moved that the cause be set down for trial.

## DEFENDANTS' MOTIONS TO DISMISS

Defendants' motions to dismiss are premised on two contentions:

1. That defendants have been denied the right to counsel guaranteed to them by the Sixth Amendment and amplified by recent decisions of the United States Supreme Court[2] or, 2—that they have not been afforded a speedy trial as required by the Sixth Amendment.[3]

Defendants' complaint that they have been prevented from consulting with their counsel stems from a rather complicated chronology of events.

On March 10, 1964 a twenty count indictment against these defendants and others was returned by the Grand Jury. Initially, defendants were apparently able to afford and obtain their own attorneys, but within slightly more than one year all but one of these counsel were compelled to withdraw.[4] Sometime thereafter, each of the above mentioned individual defendants filed the affidavit required under the provisions of the Criminal Justice Act showing their inability to employ counsel and on March 14, 1966 the Court appointed counsel on their behalf.[5]

In attempting to prepare an adequate and effective defense, Court appointed counsel found that it would be necessary to sift through the welter of almost 50,000 documents in the possession of the government that were potentially relevant to the conspiracy case against their respective clients.[6] After having reviewed certain representative documents, counsel determined that they would each require copies of many of the documents in order that consultations be meaningful. Clearly, the defendants did not have sufficient funds to pay for the copying.

Initially it was thought that money for the copying of documents for use by the attorneys for the defendants could be allocated from funds held by the Administrative Office of the United States Courts under the Criminal Justice Act.[7] 18 U.S.C.A. § 3006A. Subsequently, however, this Court was informed that neither the Administrative Office of the U. S. Courts[8] nor the Justice Department[9] were authorized to commit funds

2. Cf. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and their progeny.

3. Defendant Yanowski was the only individual who raised the issue of a lack of a speedy trial in the formal motions to dismiss filed with the Court, but at the oral argument thereon, all defendants adopted the position set forth by Yanowski. Hearing of January 8, 1968 (No transcript made).

4. Upon a showing of good cause, this Court permitted the attorney for Rosenfeld and Snyder to withdraw on November 5, 1964, and similarly, the attorney for defendants, Products Marketing, Franklin D. Ruskin, Sheldon G. Benston, and Harry Yanowski on April 20, 1965. Only the attorney for defendant Lawrence Alper has remained in the proceedings throughout. Alper, it should be noted, has not filed a motion to dismiss and thus his status will not be affected by the decision on the motions to dismiss presently before the Court. He is, of course, involved with respect to the government's motion for trial.

5. The Court deemed it necessary to appoint separate counsel for each individual defendant because of possible conflicting interests, yet it should be noted, that the situation of the various defendants in all relevant respects are identical, any differences being de minimis to a proper disposition of the instant motions.

6. Letter to Court of May 19, 1966 from counsel for defendant Yanowski. Similar letters were filed by counsel for the other defendants.

7. Letter to the Court of May 9, 1966 from the Special Assistant U. S. Attorney.

8. Letter to the Court of May 17, 1966 from the Deputy Director of the Administrative Office of the United States Courts.

9. Letter to the Court of September 15, 1966 from the Comptroller General of the United States; letter to the Court of September 21, 1966 from the Special Assistant U. S. Attorney.

to enable defendants' counsel to copy the needed documents. To date, defendants' Court appointed counsel have not been furnished copies of any of the required documents.

An associated and potentially more compelling problem arises because defendants and their Court appointed counsel have never had an opportunity to meet and discuss the case.[10] This anomolous situation arises because at the time they were arraigned, defendants executed personal appearance bonds and then returned to their homes in distant and widely dispersed parts of the United States.[11] And defendants continuing state of impecuniousness prevents them from traveling to this district to consult with their attorneys or advancing funds sufficient to enable their attorneys to travel to where they live.[12] Counsel for defendants have urged that a similar situation exists with respect to expenses incident to interviewing prospective witnesses, who, during the almost four years that have passed since a true bill was found against these defendants, have become scattered throughout the country.[13]

Here again, the current state of the law and administrative procedure apparently prevent both the Department of Justice and the Administrative Office of the United States Courts from advancing funds to Court appointed counsel before they are incurred.[14] Being fully cognizant of limitations imposed by 18 U.S.C.A. § 3006A(d), the Court is reluctant to request counsel to advance the funds necessary to enable them to have meaningful consultation with their clients.[15]

The Court is uncertain whether the impasse outlined above is the result of a breakdown in the administrative machinery for the disbursement of funds or rather that under the present statutes any such advancement would be legally impermissible, 31 U.S.C.A. § 529, or some of both. In any event, it is clear that the provisions of the Criminal Justice Act, 18 U.S.C.A. § 3006A do not contemplate the case where, as here, defendants and their counsel do not reside in nearby districts, witnesses are scattered throughout the country and the preparation of an adequate defense necessitates the copying of hundreds of documents for each defendant.

 It is indisputable that all persons brought before the criminal bar are entitled to be represented by counsel, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937).[16] That a defendant is entitled to effective as opposed to perfunctory representation is also not subject to question. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966); Fields v. Peyton,

---

10. Several of the defendants have, on occasion, had telephone conversations with their counsel, but others, due to their lack of funds, have been denied even this very limited contact with their attorneys.

11. Three of the defendants are presently living in California; one lives in Ohio and one in Mississippi.

12. Letter of April 24, 1967 to the Court from counsel for defendant Snyder. Similar letters were filed by all other counsel.

13. This matter was discussed with defendants' counsel but was not explored in depth. While the situation could probably be somewhat alleviated under Rule 17(e)(1) Federal Rules Criminal Procedure which provides for nationwide service of subpoenas to compel the attendance of witnesses at trial, nevertheless the Court envisions problems that

might arise for attorneys representing defendants where pre-trial motions or advice to clients with respect to the advisability of entering a plea, might depend upon the testimony which might be given by prospective witnesses.

14. Copy of letter of June 6, 1967 to counsel for defendant, Snyder, from Special Assistant U. S. Attorney.

15. As will appear subsequently, the government concedes that requiring Court appointed counsel to advance, subject to reimbursement from the government, funds out of their own pockets, to facilitate consultation with their clients, is not an appropriate remedy. Brief on Behalf of the U.S.A. p. 5.

16. See also: United States ex rel. Wright v. Myers, 265 F.Supp. 483 (E.D.Pa. 1967).

375 F.2d 624 (4th Cir. 1967). The touch-stone of effective counsel is the opportunity to consult with one's client. Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940):

"But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." (At p. 446, 60 S.Ct. p. 322).

Nor can a defendant's indigency be allowed to thwart this constitutionally protected right, Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956),[17] and in a proper case the right to effective counsel may require that the government reimburse an attorney or advance funds for expenses that are necessarily incident to an adequate preparation for trial. United States v. Germany, 32 F.R.D. 421 (N.D.Ala.1963).

▮ In the instant case, defendants, solely because of their poverty, have been deprived of the opportunity to consult with their Court appointed attorneys and, inter alia, have been unable to obtain copies of numerous documents which may be used in the case against them. As a result, counsel have been prevented from making any appropriate pre-trial motions [18] or preparing a defense. Furthermore, as recounted above, the funds necessary to enable counsel to properly carry out their constitutionally mandated task are apparently not forthcoming.[19]

While recognizing this dilemma, the government urges that a dismissal of the action would be impolitic and instead offers its own novel remedy. It does not suggest that counsel advance the money subject to reimbursement,[20] but rather that the Court, pursuant to the conditions of their bail bonds, order the defendants to appear in this district to consult with their counsel.

The issue raised by this suggestion is a matter of first impression in this district, and the Court can find no decisions in any jurisdiction which have approved of this unusual procedure.[21] If the Court were to issue the type of order suggested by the government's application, the indigent defendants would be unable to comply and would be in jeopardy of being cited for contempt and their bonds

---

17. See also: Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

18. Letters to the Court of May 18, 1966 and November 4, 1966 from counsel for two of the defendants.

19. See note 13, supra.

20. The government does argue, however, that the existence of a reimbursement procedure overcomes any claimed denial of effective counsel based upon its inability to advance the funds to defendants' counsel, relying upon U. S. v. Germany, supra. The issue before the Court there was whether defendant's counsel should be reimbursed for funds already advanced. It is not surprising therefore, that the Court did not consider the problem of whether the government's inability to advance funds would amount to a denial of the right to counsel in the situation where, as in the instant case, the question was raised prior to and not after the expenditure of funds by counsel. In addition, the funds expended subject to reimbursement were quite small relative to the very large and burdensome advances which counsel for defendants in this complicated case would be forced to make.

This Court notes that while some counsel might be able to afford to make the advance, others might not. A defendant's right to consult with his attorney cannot be made to hinge upon the happenstance of whether the Court appointed counsel has or has not available, funds sufficient to make the necessary advances to properly represent his client.

21. Field v. United States, 193 F.2d 86 (2nd Cir. 1961) and United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1951), relied upon by the government in support of its proposal involve wholly different factual contexts and are not in point.

revoked. Such a procedure would inevitably work an impermissible invidious discrimination upon the defendants solely because of their poverty. Griffin v. People of State of Illinois, supra. To paraphrase the question that Mr. Justice Douglas asked somewhat rhetorically in Bandy v. United States, 364 U.S. 477, 81 S.Ct. 244, 7 L.Ed.2d 850 (1960), can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have sufficient funds to enable him to consult with his attorney?

## GOVERNMENT'S MOTION FOR TRIAL

As an alternative to the procedure detailed above, the government moves this Court to set the case down for trial. Were this to be done, it suggests, the defendants could then probably be brought to this district at government expense. In making this proffer, the government apparently relies upon United States ex rel. Ormento v. Warden, 216 F.Supp. 609 (D.Kan.1963). That case involved the transfer of a prisoner from one district to another within the prison system to facilitate consultation with his attorneys pending an appeal, but the considerations upon which that opinion is based are wholly unrelated to the context of the case presently before this Court. Having found no authority under which the government could implement its suggestion, the Court is doubtful that it could be done absent a revocation of defendants' bail bonds or the issuance of bench warrants, both of which procedures, as indicated above, the Court is reluctant to invoke. The Court will, however, assume arguendo that the government would appropriate the funds necessary to bring the defendants to this district for trial. During the trial preliminaries, such as impanelling a jury, the government argues, defendants would be afforded time to consult with their respective counsel and aid in the preparation of their defense.

Considering the posture of this case, however, setting it down for trial would seem singularly inapposite as it would tend to exacerbate the already unsatisfactory situation with respect to the opportunity for attorney-client consultation, rather than remedy it. Brooks v. State of Texas, 381 F.2d 619 (5th Cir. 1967); Fields v. Peyton, supra. For as the government recognizes,[22] the practical and probable consequences of adopting this procedure would be to force the defendants to move for a continuance since, as noted previously, this would be their threshold consultations with their attorneys and it would only be after these preliminary attorney-client discussions that defendants' counsel would be able to begin to make the types of determinations necessary to prepare adequate defenses and effectively represent their clients, such as: evaluating the merits of making various pre-trial motions, discovering which witnesses it will be necessary to interview and considering the advisability of entering a plea. It seems fairly certain that the time required to enable defendants' counsel to pursue and effectuate their preliminary determination would be far longer than that contemplated by the government's suggestion in support of its motion for trial. To grant the government's motion at this time, therefore, would be to patently ignore the serious deprivation of Sixth Amendment rights described previously and render chimerical defendants' guarantee of effective counsel. Avery v. State of Alabama, supra.

For the reasons stated herein,[23] the motions to dismiss of defendants Ruskin,

---

22. Brief on behalf of U.S.A. p. 13.

23. In view of its decision to grant the motions to dismiss on the ground that defendants have been denied their right to effective representation of counsel and mindful that the same operative facts which constitute that denial of Sixth Amendment rights also give rise to the contention of defendant Yanowski, adopted by the other defendants, that he has been denied his Sixth Amendment right to a speedy trial, the Court does not pass to a consideration or resolution of that issue.

Benston, Yanowski, Rosenfeld and Snyder are granted.

The motion of the government to set the cause for trial is held in abeyance pending a conference with the Special Assistant U. S. Atty and counsel for the remaining defendants.[24]

Submit order in accordance with the foregoing.

24. It may well be that the government would wish to appeal this Court's decision granting the defendants' motions to dismiss, in view of the fact that this case is an unusual one and a matter of first impression. As the motions to dismiss and the motion for trial are indissolubly linked, the Court deems it appropriate to defer final disposition of the latter.