**UNITED STATES of America, Appellee,**

v.

**Orrin Scott REED, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Albert J. BIBBY, Appellant.**

**Nos. 80–1671, 80–1672.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1980.

Decided Sept. 10, 1981.

James R. Britton, U.S. Atty., James S. Hill (argued), Lynn E. Crooks, Asst. U.S. Attys., Bismarck, N.D., for appellee.

Carl O. Flagstad (argued), Kenner, Halvorson & Sturdevant, Minot, N.D., for Bibby.

Collin P. Dobrovolny, Minot, N.D., (argued), for Reed.

Before LAY, Chief Judge, ROSS, Circuit Judge, and ROBINSON,* Senior District Judge.

ROSS, Circuit Judge.

Orrin Scott Reed appeals his conviction on one count of transporting stolen goods in interstate commerce and conspiracy to transport such goods in violation of 18 U.S.C. §§ 2314 and 2. Albert J. Bibby, a codefendant, appeals his conviction on two counts of transporting stolen goods in interstate commerce.[1] We affirm.

The evidence introduced at trial by the government established that a number of persons had conspired to transport machinery which had been stolen in Indiana to the Minot, North Dakota, area for sale. The main government witness at trial was Dale Linn Johnson, who had been indicted as a coconspirator.[2]

Johnson testified that prior to 1979 he had operated a trucking business and through that business had become acquainted with James Thompson, a mechanic from Chicago, Illinois. In September 1979, Thompson came to Velva, North Dakota, to visit Johnson. Thompson during his visit discussed with Johnson the types and brands of tractors used by farmers in the area. Thompson asked Johnson if there was anyone Johnson knew who needed tractors. Johnson told Thompson that a person

---

* The Honorable Richard E. Robinson, Senior United States District Judge for the District of Nebraska, sitting by designation.

1. The jury acquitted Bibby on the conspiracy count and one substantive count charging a violation of 18 U.S.C. §§ 2314 and 2.

2. Johnson pled guilty to two substantive counts of violating 18 U.S.C. §§ 2313 and 2314 and the conspiracy count was subsequently dismissed.

he knew wanted a payloader. Thompson then left Velva.

On September 15, 1979, a payloader arrived in Velva on a truck driven by Albert J. Bibby. Bibby testified that he was asked to transport the payloader to Velva by a truck driver named Jerry. Bibby stated that he met Jerry at a truckstop and Jerry was looking for an acquaintance of Bibby's, James Thompson. Bibby picked up the payloader at a truck stop in Lake Station, Indiana, and delivered it to Johnson in Velva. Other evidence established that the payloader had been stolen about September 5, 1979, from a tractor company in Fort Wayne, Indiana, and had a value of $5,000 or more. See 18 U.S.C. § 2314.

Johnson testified that in subsequent phone conversations with Thompson there was discussion of the price to be asked for the payloader. Also, Johnson told Thompson that the payloader would be difficult to sell because it did not have a cab or bucket. In a later phone call, Thompson informed Johnson that he had found a cab and bucket for the payloader and, in addition, had obtained a small loader. Johnson testified that he then flew to Chicago and met Thompson. Thompson then had Johnson follow him in a truck to pick up the parts and the small loader. Thompson led Johnson to a junkyard located in Rochester, Indiana, which belonged to Orrin Scott Reed. Reed helped Johnson and Thompson load the cab and bucket and small loader in Johnson's truck. Johnson testified that he asked Reed whether there was a bill of sale for the loader and Reed responded, "How stupid are you." Other evidence established that the small loader had been stolen from an equipment company in Wabash, Indiana, on September 23, 1979.

Johnson testified that as he left the Rochester area with the parts and loader, he observed Reed and Thompson on a highway refueling a tractor which was very similar to a JI Case Model 2090 tractor. A tractor of this type had been stolen from the same equipment company and on the same date as the small loader.

About October 3, 1979, Bibby delivered two more pieces of machinery to Johnson and Thompson who had returned to Velva. Bibby testified that he had picked up the machinery from Jerry at the same truckstop in Lake Station, Indiana. The two machines were the Case tractor that had been stolen September 23, 1979, from the equipment company in Wabash, Indiana, and a JI Case Model 2670 tractor which had been stolen from an equipment company in Valparaiso, Indiana, on September 29, 1979.

The final two machines transported by Bibby were stolen from an equipment company in Warsaw, Indiana, on November 26, 1979. Bibby testified that he picked up the machines, a tractor and a dozer, from "Jerry" at the Lake Station truckstop on November 26, 1979, and arrived in Velva the next day.

Bibby also testified that he knew Reed and during the fall of 1979 stored his truck at Reed's junkyard in Rochester, Indiana.

Other evidence established that Johnson and Thompson had attempted unsuccessfully to sell some of the machines to two different persons during September 1979. In October 1979 Johnson and Thompson transferred those machines, and the ones that later arrived, to Roland Edward Mathis a/k/a Jake Mathis. Mathis, thereafter, made five attempts to sell the machines, two of which were successful. The five persons who were approached by Johnson, Thompson and Mathis, but did not buy any machines, testified at trial regarding the attempts to sell. The two persons who bought machinery from Mathis were each indicted on one substantive count of receiving stolen goods in violation of 18 U.S.C. § 2315. Neither "buyer" was indicted on the conspiracy count, but they were tried together with Reed and Bibby. The jury acquitted one "buyer" and this court has reversed the conviction of the other "buyer" and ordered a new trial. See United States v. Eckmann, 656 F.2d 308 (8th Cir. 1981).

James Ray Thompson had pled guilty to the conspiracy at the time of the Reed-Bibby trial. The plea was later withdrawn and Thompson was tried and convicted on the conspiracy and four substantive counts.

Prior to the Reed-Bibby trial, Jake Mathis was tried separately and convicted on five substantive counts. Mathis was scheduled to be tried on the conspiracy count with Bibby and Reed but Mathis pled guilty to conspiracy a few days before the trial.

Bibby was acquitted on one substantive count which related to his first trip from Indiana to Velva on which he transported a payloader. Bibby was also acquitted on the conspiracy. The two substantive counts on which Bibby was convicted related to his second and third trips with machinery to Velva.

Reed was convicted on one substantive count and the conspiracy count.

## I. Denial of a Continuance, Cocounsel and Travel Expenses

Reed and Bibby contend that the trial court abused its discretion in denying their motions for a continuance and for appointment of cocounsel or, in the alternative, travel expenses for their attorneys.

Reed was arraigned in Minot, North Dakota, on April 18, 1980, and was released on bond to return to his home in Rochester, Indiana. On April 29, 1980, counsel who resided in Minot was appointed for Reed and Reed was so notified.

Bibby was arraigned in Fargo, North Dakota, on April 30, 1980, and he was released on bond to return to his home in Cicero, Illinois. Counsel for Bibby was notified of his appointment on April 25, 1980, and met with Bibby for five hours on the day he was arraigned. Counsel for Bibby resided in Minot.

On April 22, 1980, the trial judge entered an order setting June 2, 1980, as the date of trial.

Reed argues that a continuance was necessary because trial counsel had only three weeks to prepare for trial due to an intervening one week trial. Reed concedes that the government followed an open file policy but emphasizes that the government's files contained the results of a major investigation involving seven defendants and there was no government effort to separate the

information as to each defendant. Reed also argues that the district court abused its discretion in denying motions for appointment of cocounsel in Rochester, Indiana, or, in the alternative, expenses for counsel to travel to Indiana. Reed states that these expenditures were necessary for counsel to meet personally with him, to investigate the junkyard where the transaction took place, and to interview defense witnesses.

Bibby argues that his motion for a continuance should have been granted because counsel had only about four weeks to prepare and the indictment charged seven defendants in eight counts. Bibby asked that the district court, as an alternative to a continuance, appoint cocounsel in Illinois or that counsel's request for travel expense to Illinois be approved. Bibby argues that such expenditures were necessary so that counsel could meet with him and conduct an investigation.

The district court denied the motions for a continuance noting that both attorneys had been aware of the June 2, 1980 trial date since April 29th or 30th. The district court also denied counsels' request for travel funds or appointment of cocounsel because it had not been established why such expenditures were necessary. The court stated that such expenditures "will not be allowed on the basis of the conclusory statements contained in the affidavits" submitted by counsel.

The denial of a continuance will constitute reversible error only if there was a clear abuse of discretion. *United States v. Wolf*, 645 F.2d 665 at 667 (8th Cir. 1981). In reviewing the denial of a motion for a continuance which is based on inadequate preparation for trial, the appellate court considers "the amount of time granted for preparation, the conduct of counsel at trial, and whether prejudice appears from the record." *United States v. Wolf, supra*, at 667, quoting, *United States v. Campbell*, 609 F.2d 922, 925 (8th Cir. 1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980).

Our review of the record reveals no prejudice to appellants due to inadequate preparation. Trial counsel for both appellants conducted themselves ably and therefore we find that the preparation time granted was adequate. While appellants argue that the length of the government's investigation and the voluminous government file warranted additional preparation, appellants "do not indicate what they were unable to do at trial which additional preparation would have allowed." *United States v. Campbell*, 609 F.2d 922, 926 (8th Cir. 1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980).[3]

Similarly, appellants' briefs do not allege *how* their defense was prejudiced by the denial of cocounsel or travel expenses. Reed concedes that counsel communicated with him by phone but alleges that the district court abused its discretion in failing to allow travel expenses for a personal interview. But even if we were to assume an abuse of discretion, Reed does not state how the denial of the personal interview resulted in prejudice. *See United States v. Sailer*, 552 F.2d 213, 215 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).

Reed's request for cocounsel or travel expenses stated that travel expenses were necessary to "discuss this matter with potential witnesses" and to "go to the site of the alleged incident to investigate the circumstances surrounding the alleged incident." At oral argument counsel for Reed stated that he should have been allowed to view the junkyard because of the amount of testimony describing the location of various items in the junkyard.

At trial the defense presented extensive testimony regarding the junkyard through Reed's wife and two other persons who lived or worked at the junkyard. After reviewing the detailed examination of these three witnesses by Reed's counsel regarding the junkyard as it appeared at the time of the incident, we are convinced there was no prejudice to the defense. Furthermore, Reed does not allude to the possible existence of additional defense witnesses who could have been interviewed by counsel.

As indicated, the record also shows no abuse of discretion in the denial of Bibby's motions. As to his motion for a continuance, we note that Bibby's counsel had a month to prepare for trial, met with Bibby for five hours on the day of arraignment and had constant phone contact with Bibby.

The only indication as to how the defense may have been prejudiced by denial of the motions for a continuance, for appointment of cocounsel or travel expenses was alluded to at oral argument. Counsel for Bibby stated that his client had unsuccessfully attempted to locate "Jerry" and that the FBI had made no effort to check on "Jerry."

However, the affidavit and motion submitted to the district court merely stated that counsel could not adequately prepare by phone and that cocounsel be appointed

---

**3.** Reed also argues that the failure of the government to disclose certain exculpatory evidence violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence involved was phone company records which were used on rebuttal to corroborate Johnson's testimony that he was in Indiana at Reed's junkyard. While Johnson did not specify the exact date he was in Indiana, the phone company records showed a phone call which would place Johnson in Indiana on September 26, 1979.

Apparently, the government file did not contain the records but only a statement by an FBI agent regarding his review of the records. Counsel for Bibby requested and reviewed the records before trial; however, Reed's counsel did not request the records.

Reed argues that if he had obtained the specific date on which Johnson was at the junkyard, there might have been the possibility of an alibi defense. Reed states that this possible defense arises because he was an over-the-road trucker who had to file logs regarding his trips with government agencies.

If we were to liberally construe Reed's argument as possibly being based on inadequate preparation, we still would find no merit. Reed does *not* suggest that his logs do, in fact, place him at a location other than the junkyard on September 26, 1979. Rather, his argument is that the mere existence of such logs raises the possibility of an alibi defense. This rationale also defeats any claim that the phone company records could be characterized as "exculpatory evidence."

"to assist in preparation of the case," or that travel expense be authorized "for necessary preparation." Counsel made no statements concerning the need for investigation or more specifically, the need to find and interview "Jerry."

At oral argument there was no indication that additional information had been found concerning "Jerry" or his whereabouts. Also at oral argument Bibby's attorney indicated that Bibby had given a statement to the FBI on April 23, 1980, which indicated "Jerry" was the person at the Lake Station truckstop. Counsel's motions were not made until May 13, 1980, well after Bibby's statement to the FBI and the five hour interview of Bibby conducted by counsel.

Considering these facts, we believe that counsel did not make "as complete a showing of necessity as could then be reasonably expected of him." *Mason v. Arizona*, 504 F.2d 1345, 1352 (9th Cir. 1974), *cert. denied*, 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975). More importantly, Bibby has failed to show "by clear and convincing evidence, that he was substantially prejudiced" by the denial of his motions. *Id.* at 1353. Thus, we hold that the district court did not abuse its discretion in denying Bibby's motion due to the "conclusory" affidavits filed by counsel.

## II. Severance

■ Bibby and Reed argue that the district court abused its discretion in failing to grant their motions for severance. Unlike Bibby, Reed failed to renew his severance motion at the close of the government's case or at the conclusion of all the evidence and thus has waived his request for a separate trial. *United States v. Brim*, 630 F.2d 1307, 1310 (8th Cir. 1980). In any event, Reed makes only a very general argument that certain testimony was not relevant to him. Reed makes no argument as to how this testimony prejudiced him and, in fact, the testimony was either relevant to the conspiracy charge or was not even minimumly prejudicial.

The case of *United States v. Knife*, 592 F.2d 472 (8th Cir. 1979) emphasized the need for a showing of clear prejudice when reviewing the denial of a motion to sever. The court stated:

A motion to sever under Rule 14 of the Federal Rules of Criminal Procedure is addressed to the sound discretion of the trial court. *United States v. Martinez*, 573 F.2d 529, 532–33 (8th Cir. 1978); *United States v. Anthony*, 565 F.2d 533, 538 (8th Cir. 1977); *United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). A denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. *United States v. Jackson*, *supra* at 523; *Johnson v. United States*, 356 F.2d 680, 682 (8th Cir.), *cert. denied*, 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966). To establish grounds for reversal, a defendant must show something more than the mere fact that his chances for acquittal would have been better had he been tried separately. *Williams v. United States*, 416 F.2d 1064, 1070 (8th Cir. 1969). He must "affirmatively demonstrate that the joint trial prejudiced [his] right to a fair trial." *Golliher v. United States*, 362 F.2d 594, 603 (8th Cir. 1966).

In applying these general principles, this Court has recognized that the fact that evidence may be admissible as to one defendant but not as to another does not alone require that the defendants be given separate trials. *Caton v. United States*, 407 F.2d 367, 372 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). Nor is a defendant entitled to severance simply because the evidence against a codefendant may be more damaging than the evidence against him. *United States v. Jackson*, *supra* at 525; *United States v. De Larosa*, 450 F.2d 1057, 1065 (3d Cir. 1971), *cert. denied*, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972). Severance is required only where the proof is such that a jury could not reasonably be expected to compartmentalize the evidence as it relates to separate defendants. *United States v. De Larosa*, *supra* at 1065.

*Id.* at 480.

■ The proof in this case lent itself easily to compartmentalization. Bibby was

the truck driver who hauled the machines to North Dakota. The charges against Reed arose from the junkyard transaction in which Bibby was not involved. The other two defendants were the "buyers" of machines which had been sold by coconspirator, Jake Mathis. The most convincing evidence that the jury was able to separate the proof as to each defendant is that Bibby was acquitted on the conspiracy count and the substantive count which related to the first trip.

We have reviewed Bibby's allegations regarding how he was prejudiced by a joint trial. Some of his arguments involve evidence which would have been admissible against him in a separate trial due to the presence of a conspiracy charge. Other allegations do not establish clear prejudice but only some possibility of a better chance of acquittal.

We hold, therefore, that there was no abuse of discretion in the trial judge's denial of appellants' motions to sever.

### III. Other Issues

■ Appellants Bibby and Reed have raised numerous other issues on appeal. We have considered each issue and find them to be without merit. Specifically, we note that the evidence was more than sufficient to support Reed's conspiracy conviction and Bibby's conviction on two counts of violating 18 U.S.C. § 2314.

Affirmed.

LAY, Chief Judge, dissenting.

I would reverse these convictions and grant a new trial. In my judgment it was fundamental error for the district court to deny traveling expenses to counsel to investigate the scene of the crime and have personal interviews with the defendants prior to trial. The effect of the district court's ruling was to deny effective assistance of counsel to the defendants.

Title 18 U.S.C. § 3006A(d)(1) provides that an attorney appointed to represent an indigent defendant "shall be reimbursed for expenses reasonably incurred." "Expenses"

under subsection (d) are distinct from those described in subsection (e) which creates a procedure under which indigent defendants can obtain "investigative, expert, or other services." Subsection (d) covers out-of-pocket expenses related to the lawyer's own work. *United States v. Pope*, 251 F.Supp. 234, 240 (D.Neb.1966).

The majority cites *United States v. Sailer*, 552 F.2d 213 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977) and *Mason v. Arizona*, 504 F.2d 1345 (9th Cir. 1974), *cert. denied*, 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975) in order to establish that the defendants must make a reasonably complete showing of necessity at the time of their request for expenses and must now make a substantial showing of prejudice on appeal. But these cases involved a handwriting expert and an investigator respectively and arose under subsection (e). The right to effective assistance of counsel is a more fundamental right, both under the statute and the Constitution, than the right to assistance from experts. The standards utilized to determine if the latter has been violated are not applicable in analyzing violations of subsection (d) of the Criminal Justice Act.

Travel expenses are clearly included in subsection (d). *United States v. Owens*, 256 F.Supp. 861, 864 (W.D.Pa.1966). In some cases payment has been advanced. *See, e. g., United States v. Largan*, 330 F.Supp. 296 (S.D.N.Y.1971). It seems fundamental that when an appointed attorney seeks advance payment for travel expenses to interview a defendant and investigate the factual charge, payment should be made in advance under the same standards that govern reimbursement.

Failure to provide necessary expense money deprives indigent defendants of the effective assistance of counsel. Numerous findings of ineffective assistance have been grounded on attorneys' failure to fully investigate their case. *See, e. g., McQueen v. Swenson*, 498 F.2d 207, 216–18 (8th Cir. 1974). Judge Johnson, in *United States v. Germany*, 32 F.R.D. 421 (M.D.Ala.1963), wrote:

[A] reasonable interpretation of the constitutional requirement that effective counsel must be provided indigent defendants and that said counsel must be provided the "opportunity" to prepare the case implies something more than "time." An essential ingredient to an attorney effectively representing a defendant in a criminal case, when it comes to determining whether that attorney has had an "opportunity" to investigate and prepare the case, is funds to pay the necessary and essential expenses of interviewing the material witnesses and in viewing the scene of the alleged crime.[1]

*Id.* at 423.

Because they were denied funds to travel to Indiana, counsel were unable to view Reed's junkyard where Thompson and Johnson acquired a cab, bucket, and small loader; they were denied a view of the truck stop where Bibby picked up a tractor from a man named Jerry who was never located; and they were unable to personally observe the area where Johnson allegedly saw Reed and Thompson refueling a tractor. More importantly, the defendants were deprived of personal contact with their attorneys early in the case so as to allow effective preparation for trial. Denial of this opportunity precluded a meaningful opportunity for counsel and defendant to develop the personal and confidential relationship so necessary in attorney-client relations. Counsel had no opportunity to study and evaluate their clients' credibility and thus to project possible defenses or theories for trial.

The majority opinion seemingly acknowledges these disabilities, but holds that defendants have not made a sufficient showing of prejudice. Defendants should not be required to show what benefits they would

have gained from investigations and consultations they were prevented from pursuing. When the state raises structural barriers to effective assistance of counsel, no specific showing of prejudice is required. *United States v. Decoster*, 624 F.2d 196, 201 (D.C. Cir.1979). In *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Supreme Court overturned the conviction of a petitioner who was not allowed to consult with his attorney during an evening recess. The Court explicitly held that prejudice need not be specifically alleged.

Counsel in this case were unable to investigate several sites where elements of the crime were perpetrated and to consult with their clients on a face-to-face basis. The denial of travel expenses violated 18 U.S.C. § 3006A(d)(1) and deprived appellants of their sixth amendment right to effective assistance of counsel. I would reverse their convictions.

---

1. In *United States v. Germany*, 32 F.R.D. 421 (M.D.Ala.1963), the district court dismissed an indictment because the government refused to honor an order directing it to furnish counsel funds needed to travel to interview witnesses and view the scene of the crime. The district court relied on the sixth amendment and Fed.R. Crim.P. 15(c) which empowers courts to order the government to pay the expenses of indigent defendants' counsel incurred in traveling to

take a deposition. In *United States v. Products Marketing*, 281 F.Supp. 348 (D.Del.1968), the court dismissed the prosecution because the government had not advanced funds needed by counsel to travel in order to consult with defendants. Cf. *Davis v. Coiner*, 356 F.Supp. 695 (N.D.W.Va.1973) (equal protection case under state statute granting funds for government to take out-of-state depositions).