UNITED STATES of America, Appellee,

v.

James E. LITTLE, Appellant.

UNITED STATES of America, Appellee,

v.

I. L. VAUGHN, Appellant.

Nos. 77–1238 and 77–1240.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 29, 1977.

Decided Nov. 23, 1977.

Rehearing Denied Dec. 30, 1977.

**348**

Thomas A. Buford and Hal Gerber, Memphis, Tenn., filed brief and supplemental brief, for James E. Little.

Jack L. Lessenberry, Little Rock, Ark., filed brief and reply brief, for I. L. Vaughn.

Robert E. Johnson, U. S. Atty. and Floyd Clardy, Asst. U. S. Atty., Fort Smith, Ark., filed brief, for appellee.

Before BRIGHT, ROSS and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

On August 30, 1973, appellants Vaughn and Little were indicted by a federal grand jury in the Western District of Texas on eight counts of mail fraud, in violation of 18 U.S.C. §§ 2, 1341 (1970). The charges arose out of an alleged check kiting scheme employing accounts in three separate banks, one in the name of Little, and the others in the name of two different business entities controlled by Vaughn.

Subsequent to the indictment, the cases were transferred to the Western District of Arkansas. In separate jury trials held in January 1977, the defendants were convicted on all eight counts of the indictment. Both defendants have appealed, and we consolidated their cases for consideration. Our scrutiny of the contentions made by appellants has uncovered no prejudicial error, and we affirm their convictions on all counts.

**I. Failure to Grant a Continuance.**

At the outset, we consider a claim raised by both Vaughn and Little: that the trial court erred in refusing to grant their motions for continuances in their respective trials. Both appellants moved for continuances after they learned that a witness subpoenaed by them (and by the Government), L. R. Smith, was unable to testify or be deposed because of a serious illness.

In denying their motions, the trial judge relied on two grounds: (1) there was no showing that the witness, Smith, would be available to testify or be deposed in the future; (2) neither party had shown adequately that the testimony was necessary.

The trial court has discretion to grant continuances, and this discretion is reviewable only for abuse. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *United States v. Hamilton*, 452 F.2d 472 (8th Cir.), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972). Whether denial of a continuance is arbitrary enough to violate due process depends on the "circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite, supra*, 376 U.S. at 589, 84 S.Ct. at 850.

As is commonly the case, the trial judge must balance a number of considerations in rendering his decision. One consideration is the nature of the case itself. In a complicated case, see, e. g., *Kimball v. United States*, 437 F.2d 921 (8th Cir.), *cert. denied*, 402 U.S. 996, 91 S.Ct. 2181, 29 L.Ed.2d 162 (1971), or one set for trial before adequate time has been provided for trial preparation, *Tasby v. United States*, 451 F.2d 394 (8th Cir. 1971), equity favors a continuance. A second factor must be the diligence of the party requesting the continuance. *United States v. Collins*, 435 F.2d 698 (7th Cir. 1970), *cert. denied*, 401 U.S. 957, 91 S.Ct. 983, 28 L.Ed.2d 241 (1971). If the party has not been dilatory or negligent in the preparation of his case, and yet still needs more time before trial, that party obviously has a greater claim to a continuance. Third, the trial judge must consider the conduct of the opposing party. If the other side has been uncooperative, or tardy in making material available that the movant had a right to discover, then the court must take that into account. *See, e. g., United States v. Vega*, 447 F.2d 698 (2d Cir.

1971), *cert. denied*, 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972). Fourth, the court must assess the effect of the continuance. In some cases delay may operate to disadvantage one side at the expense of the other, and the court should be cognizant of that danger. Fifth, the court must consider the asserted need for the continuance. Sudden exigencies and unforeseen circumstances militate in favor of continuances, although like all of the other factors mentioned, they may not of themselves warrant the continuance. The evaluation and balancing of these factors, as well as other additional factors that may arise, rest with the district judge, and he must be afforded a substantial amount of discretion in his decisionmaking in this area of the law.

■ We find nothing in the record indicating that the district court abused its discretion in denying the motion for a continuance. Four years had elapsed since Vaughn and Little had been indicted. During that period the court had already granted one change of venue and at least one continuance at their request. Over that long period of time neither Vaughn nor Little had bothered to interview the witness, Smith. Indeed, neither could say with any certainty what that testimony would be. Nor was there any assurance that the witness would ever again be available to testify or give a deposition. In short, the district court had ample justification for its decision.

## II. *Little's Separate Claims of Error.*

In addition to contending that a continuance should have been granted, Little has raised five other claims of error,[1] of which two merit discussion in this opinion.

Ironically, one of these two claims is that the conviction must be reversed for failure to grant a speedy trial. In support of his argument, Little cites both the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (Supp. V 1975), and the sixth amendment guarantee of a speedy trial.

■ Because Little failed to move for dismissal prior to trial, he waived any right to the sanction of dismissal under the Speedy Trial Act. *See* 18 U.S.C. § 3162(a)(2) (Supp. V 1975). We also find that he waived his sixth amendment right to a speedy trial. While the record is somewhat confused, it does indicate that both he and Vaughn expressly waived their right to a speedy trial while the case remained pending in Texas. Subsequent to the transfer to the Western District of Arkansas, both Little and Vaughn sought and were granted a continuance. They then sought another continuance just prior to the beginning of their trial, which was denied.

■ During this period both Little and Vaughn were free on bond. At no point did either defendant press for trial. Although defendants are not required to demand a speedy trial, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), they cannot, after acting to *delay* their trial, have their case dismissed for lack of a speedy trial.

Little also protests the district court's decision to overrule his motion *in limine* that sought to exclude a prior conviction on April 19, 1963, for fraud in the sale of oil and gas leases. The Government apparently planned to use the conviction to impeach

---

1. Three of these claims of error were raised in his first brief filed before this court: (1) overruling his motion *in limine* that his prior conviction of April 19, 1963, be excluded from the proceedings; (2) overruling his motion to dismiss on the grounds that 18 U.S.C. § 1341 (1970) does not apply to check kiting; (3) admitting into evidence checks drawn on certain corporate accounts. The last two assignments of error were raised in a supplementary brief filed by Little's new counsel of record, Hal Gerber. They are: (4) failure to grant a speedy trial; and (5) insufficiency of the evidence.

Three of these claims can be disposed of summarily. In *United States v. Scott*, 554 F.2d 866 (8th Cir. 1977), we expressly held that 18 U.S.C. § 1341 covers check kiting. The court also did not err in admitting the corporate checks into evidence. The checks were relevant, admissible under Federal Rule of Evidence 902(9) as commercial paper or as an exception to the hearsay rule under Rule 803, and did not unfairly prejudice the defendant. Based on our review of the record, we also find that more than enough evidence supports the conviction.

Little if he took the stand to testify on his own behalf, and gave him notice pursuant to Federal Rule of Evidence 609(b) of its intention.[2] Little contends that the prejudicial effect of the fourteen-year-old conviction outweighed its probative value and that it precluded him from testifying on his own behalf.

■ Under the literal language of Rule 609(b),[3] the prior conviction was not admissible because Little had completed his sentence more than ten years earlier[4] unless the district court determined that its probative worth outweighed its prejudicial value and written, timely notice was given to the defendant of the Government's intentions to use the conviction as evidence.

2. Rule 609(b) reads:
    (b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

3. *See* note 2 *supra*.

4. The Government contends that even though it has been more than 10 years since Little finished his sentence for the prior conviction, the conviction ought to be admissible anyway under Rule 609(a)(2). Rule 609(a) provides:
    (a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime * * * (2) involved dishonesty or false statement, regardless of the punishment.
The Government reasons that the 10-year time limit of 609(b) applicable to 609(a) lapsed *after* Little was indicted in 1973, and that a defendant ought not to be able to profit from dilatory tactics. We express no opinion on this contention because we find that the conviction was admissible under 609(b) under the trial court's ruling that its probative worth outweighed its prejudice.

In this case, both requirements were met. As noted earlier, the Government gave proper notice. The court then held a hearing on the defendant's motion *in limine* and after considering the arguments on both sides determined to admit the prior conviction. We cannot say that it erred in its determination. The district court was best situated to determine the "interests of justice." *See* Fed.R.Evid. 609(b). The prior conviction of a crime relating to fraud could be said to be relevant for impeachment with respect to Little's alleged check kiting.

### III. *Vaughn's Separate Claims of Error.*

■ Appellant Vaughn raises one substantial separate claim or error:[5] The trial

5. Vaughn makes an additional claim relating to admissibility of evidence that requires no extended discussion. He argues that the court erred in admitting into evidence certain checks drawn on the accounts of Environmental Associates and Echo Valley Spring Water Company and made out to an entity called International Marketing Services, Inc.

The Government apparently had adopted an "open file" discovery posture. The International Marketing checks were in the file when defense counsel examined it, but the Government, unaware of their significance, did not draw his attention to them.

Shortly before trial began, the Government learned of their significance. International Marketing was a corporation solely owned and managed by Vaughn. When appellant Vaughn took the stand and testified that he received no monetary benefit from the kite, the Government introduced the checks, totalling about $50,000, made out to Vaughn's corporation. The trial judge overruled Vaughn's motion, based on surprise, to exclude the checks from evidence.

We find no error here. The Government did not learn of the significance of the checks until shortly before trial and even then did not know whether it would utilize the checks at trial. It later determined to use the evidence to impeach Vaughn's testimony, a contingency that it could not have foreseen with complete confidence. Moreover, the Government had no obligation to apprise defense counsel of the significance of its evidence; its only obligation was to disclose the evidence under terms of the stipulation agreed to by both parties. Indeed, if anyone knew of the significance of those checks prior to trial, it would have been the appellant, who made out and signed each of them to an entity that he controlled.

court should have granted a mistrial after the prosecutor asked a question of codefendant Little resulting in the latter's invocation of the fifth amendment privilege.

After Little had been tried and convicted, the Government called him as a witness in Vaughn's trial. Concerned about the prejudicial impact of Little's testimony, particularly if he repeatedly invoked the fifth amendment, Vaughn made a motion *in limine* to exclude his testimony. The trial judge, outside the presence of the jury, listened to the substance of Little's testimony before ruling on the motion. At one point during this examination, the prosecutor asked Little:

> Did you and Mr. Vaughn ever propose to get together and propose to kite checks in order to finance the Echo Valley Spring Water Company?

Little replied:

> I refuse to answer that on the grounds it might tend to incriminate me.

Counsel for Vaughn made no specific objections to this question nor did he request, if his motion *in limine* were overruled, that this question be excluded.

After hearing all of the testimony of Little, the trial judge overruled Vaughn's motion *in limine.* Little then took the stand and testified extensively. The prosecutor asked the same question, quoted above, that had been asked of Little outside the presence of the jury. Little gave the same response, declining to answer on grounds of self-incrimination. Counsel for Vaughn immediately moved for a mistrial. The judge denied the motion, but instructed the jury to ignore both the question and the answer. The prosecutor did not make any subsequent references to either the question or the answer.

[11] In light of the witness' previous answer to this question we believe that the prosecutor should have avoided asking the same question. Yet the failure to grant a mistrial does not constitute error in this case. Appellant should have objected specifically to the tainted question when first asked outside of the presence of the jury. Even failing that, however, the trial court acted quickly and judiciously to minimize the prejudicial impact of the question upon the defendant, who had been a colleague and collaborator of the witness. This ruling is not a condonation of the prosecutor's action in asking a question that undoubtedly would cause the witness to claim a fifth amendment privilege. Under other circumstances the asking of such question could require a mistrial. *See United States v. King,* 461 F.2d 53 (8th Cir. 1972).

Finding no prejudicial error, we affirm these convictions.