UNITED STATES of America, Appellee,

v.

Gerald L. SINGER, Appellant.

UNITED STATES of America, Appellee,

v.

Raymond E. WAGNER, Appellant.

Nos. 80–1983, 80–1997.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1981.

Decided Oct. 5, 1981.

Certiorari Denied Jan. 11, 1982.
See 102 S.Ct. 1030.

Raymond C. Conrad, Jr., Federal Public Defender, argued, W. D. Mo., Kansas City, Mo., for appellant Singer.

J. Whitfield Moody, Asst. U. S. Atty., Carol Ann Petren, Asst. U. S. Atty., argued, Kansas City, Mo., for appellee.

James R. Wyrsch, argued, Kansas City, Mo., for appellant Wagner.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Gerald L. Singer and Raymond E. Wagner appeal from final judgments entered in the District Court[1] for the Western District of Missouri upon jury verdicts finding them guilty of conspiracy to sell stolen goods in violation of 18 U.S.C. §§ 371, 2315 (count I) and theft of an interstate shipment in violation of 18 U.S.C. §§ 2, 659 (count II). The district court sentenced Singer to four years imprisonment for count I and six years for

1. The Honorable Elmo B. Hunter, United States Senior District Judge for the Eastern District of Missouri.

count II, to be served concurrently, and Wagner to four years for count I and two years for count II, to be served concurrently.

For reversal both Singer and Wagner argue that (1) the district court abused its discretion in admitting into evidence on cross-examination a conviction more than ten years old and (2) the district court erred in denying their motions for judgment of acquittal on the ground of insufficient evidence. Wagner argues that the district court erred in (1) denying his motion to dismiss the indictment, (2) refusing to admit into evidence that his probation would be revoked, (3) denying his motion for mistrial on the ground of prosecutorial misconduct, (4) denying his motion for severance, (5) denying his motion for judgment of acquittal, and (6) denying his requests for disclosure of *Brady* materials. For the reasons discussed below, we affirm the judgments of the district court.

In the spring of 1979 the Kansas City, Missouri, police department and the local office of the Federal Bureau of Investigation (FBI) began a joint undercover investigation of possible illegal activity in the liquor and vending industry in the Kansas City area. During the course of this undercover investigation, two FBI agents met an individual named Kenneth Gordon. Gordon cooperated with the undercover agents in this investigation. On March 21, 1980, Gordon informed the undercover agents that Robert G. Beverlin[2] offered to sell him a truckload (about 40,000 pounds) of beef at $.50 per pound. The next day, with the approval of the undercover agents, Gordon discussed the sale with Beverlin and Wagner and arranged another meeting for the following day, March 23.

On March 23 Gordon, accompanied by an undercover agent, met Beverlin, Thomas C. Alley, Singer, and Wagner at a local restaurant. Gordon was wearing a recording device and the meeting was videotaped by a police surveillance team. Both the tape recording and the videotape of this meeting were played for the jury. Beverlin, Alley, Singer, and Wagner discussed the details of the arrangement. Delivery was set for later that evening in the parking lot of a local motel.[3] The tractor-trailer in question contained over 38,000 pounds of beef which was being shipped from Iowa Beef Processors in Emporia, Kansas, to Omaha Packing in Boston, Massachusetts, by Allied Transportation Services. Alley worked as a driver for Allied Transportation and had been assigned to deliver this shipment to Boston. Singer was a mechanic. Alley had picked up the tractor-trailer from Emporia, Kansas, and driven to a local truck stop, where he left the tractor-trailer. Singer would then drive the tractor-trailer from the truck stop to the motel parking lot. After payment the undercover agent, who had been posing as a truck driver, was to drive the tractor-trailer away and later to destroy it, following suggestions proffered by Singer and Wagner. The next morning Alley would report the tractor-trailer had been stolen from the truck stop.

Events developed according to plan. The police organized surveillance of the motel and parking lot. At about 8 p.m. Gordon and the undercover agent met Beverlin, Wagner, and Singer at the motel. After indicating that no money would change hands until the meat was inspected, the undercover agent asked Singer to move the tractor-trailer to a different section of the parking lot for inspection. Singer moved the tractor-trailer and was approached by

2. Beverlin entered a guilty plea before trial. Alley went to trial with Singer and Wagner, was found guilty, but was not sentenced at the same time as Singer and Wagner, and therefore is not a party in these appeals.

3. Delivery was originally arranged for a location in Olathe, Kansas. The place of delivery was then changed to a motel parking lot in Kansas City, Missouri. As discussed in the text *infra*, Wagner argues that the place of delivery was moved from Kansas to Missouri in order to "manufacture" federal jurisdiction on the basis of interstate commerce. The government argues that the place of delivery was changed because the motel parking lot was a better location for surveillance and arrests and because the Kansas City, Missouri, police department was familiar with the investigation.

two undercover agents. Singer ran off but was later arrested. Wagner and Beverlin were arrested at the motel. The general manager of Allied Transportation testified that Singer called him in the morning of March 24 and told him that he had been testdriving a truck, had stopped at a local motel, and had been "hijacked" by two men.

Singer and Wagner's defense theory was that, during the events of March 22 and 23, they had been acting as informants for the FBI and therefore lacked the requisite specific intent. FBI Special Agent Emmett L. Trammell testified that he had known Singer for about two years and that Singer had supplied information about stolen vehicles several times. Trammell further testified that he had interviewed Singer during the late evening hours of March 23 and at his (Trammell's) request on March 28, 1980, and that during that interview Singer told him that he had been testdriving a vehicle, had stopped for coffee at a local motel, and had been "hijacked" by two individuals, one of whom Singer believed had a gun. Wagner claimed that he had been assisting Singer in his undercover activity. Both Singer and Wagner testified in their own defense and were impeached by references to prior felony convictions.

The jury returned guilty verdicts and these appeals followed.

## I.  *Admissibility of Prior Conviction under Rule 609(b)*

Both Singer and Wagner argue that the district court abused its discretion in admitting into evidence, following a hearing out of the presence of the jury and an on-the-record determination of admissibility,[4] their 1968 state felony convictions for grand larceny (stealing an electric transformer). That Singer and Wagner had been codefendants in the 1968 state prosecution was put before the jury.[5] The government also brought out that Singer had been convicted in 1972 for concealing a stolen motor vehicle and that Wagner had been convicted in 1977 for interstate transportation of a stolen motor vehicle.

By the time of trial in August 1980, the prior convictions in question were more than ten years old. Thus, the district court correctly analyzed the question of admissibility under Fed.R.Evid. 609(b).[6] The district court held a hearing out of the presence of the jury and determined on the record that "in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances

---

**4.** Neither appellant argues that the government failed to give the defense advance notice of intent to use the prior conviction to impeach their credibility.

**5.** On a related point Singer argues that the information that they were codefendants in the 1968 state prosecution was particularly prejudicial. We note, however, that Wagner identified Singer as his codefendant during his testimony without objection by defense counsel. Singer did not refer to Wagner as his codefendant during his testimony.

**6.** Fed.R.Evid. 609 provides in part:
  (a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he [or she] has been convicted of a crime shall be admitted if elicited from him [or her] or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he [or she] was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dis-

honesty or false statement, regardless of the punishment.
  (b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
  Here, Singer testified that he pled guilty to the grand larceny charge and received probation from the bench. There was no dispute about the running of the ten-year period.

substantially outweighs its prejudicial effect." *Id.* ` The district court did not make specific findings on the record [7] but permitted the government to outline the reasons which supported admissibility.[8]

██ Fed.R.Evid. 609(b) establishes what is in effect a rebuttable presumption against the admissibility of prior convictions more than ten years old.[9] *See Mills v. Estelle,* 552 F.2d 119, 120 (5th Cir.), *cert. denied,* 434 U.S. 871, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977). *Accord, United States v. Portillo,* 633 F.2d 1313, 1323 (9th Cir. 1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981); *United States v. Cobb,* 588 F.2d 607, 612 & n.8 (8th Cir. 1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *United States v. Sims,* 588 F.2d 1145, 1147–49 (6th Cir. 1978); *United States v. Mahler,* 579 F.2d 730, 734–36 (2d Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978); *United States v. Cavender,* 578 F.2d 528, 531 (4th Cir. 1978); *United States v. Shapiro,* 565 F.2d 479, 480–81 (7th Cir. 1977). The general rule, therefore, is inadmissibility. Moreover, in the Senate Report on the Rules of Evidence, the Senate noted that "convictions over ten years old generally do not have much probative value." The presumption against admissibility is, therefore, founded on a legislative perception that the passage of time dissipates the probative value of a prior conviction. The balancing scale Congress has given the courts is weighted against a finding that the probative value of a more than 10-year-old conviction substantially outweighs its prejudicial effect.

*United States v. Cathey,* 591 F.2d 268, 275 (5th Cir. 1979) (citations omitted). *See also* H.R.Rep.No. 93–650, 93d Cong., 1st Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7051, 7085; S.Rep.No. 93–1277, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7061; H.R.Conf. Rep.No. 93–1597, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7051, 7103; 3 D. Louisell & C. Mueller, Federal Evidence § 314 (1979).

"[T]he trial court judge is 'best situated to determine the "interests of justice" ' in considering whether evidence of prior crimes should be admitted at trial, in accordance with the terms of Rule 609(b)." *United States v. Spero,* 625 F.2d 779, 781 (8th Cir. 1980), *citing United States v. Little,* 567 F.2d 346, 350 (8th Cir.), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1977). However, under the present circumstances we believe the district court abused its discretion in permitting the government to impeach appellants with the 1968 convictions. First, the probative value of the 1968 convictions is questionable. These convictions are more than twelve

---

**7.** Neither appellant argues that the district court's finding that the probative value of the conviction substantially outweighed its prejudicial effect was inadequate because the district court did not on the record specifically and explicitly balance the supporting facts and circumstances. *See United States v. Spero,* 625 F.2d 779, 781 (8th Cir. 1980).

**8.** According to the government, the following circumstances supported the admission of the 1968 convictions: Singer and Wagner were acting together, to explain their professed desire to clear their criminal records by acting as informants, and each appellant had been committed within the ten-year period of another offense. (Tr.III, 117–18).

**9.** An important purpose of Rule 609(b) is to avoid convicting criminal defendants as a result of prejudice caused by the cumulative effect of old criminal convictions. When stale convictions are offered for the purpose of impeaching a witness, they often shed little light on the present tendency of the witness towards truthfulness and veracity. *United States v. Sims,* 588 F.2d 1145, 1148 (6th Cir. 1978).

The jury may misuse the evidence by considering the defendant a person of criminal tendencies and, therefore, more likely to have committed the crime for which he [or she] is being tried, or if the prior conviction is similar to the new charges, the jury may misuse the prior conviction as evidence of guilt, or the jury may just be more willing to convict a person who already has been convicted for a different crime.

*United States v. Cathey,* 591 F.2d 268, 275 (5th Cir. 1979), *citing Mills v. Estelle,* 552 F.2d 119, 120 (5th Cir.), *cert. denied,* 434 U.S. 871, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977), *and United States v. Martinez,* 555 F.2d 1273, 1275 (5th Cir. 1977).

years old.[10] Although the district court concluded that grand larceny is a crime involving dishonesty,[11] such a finding is "insufficient justification, by itself, for use of the prior conviction[s]. The presumption against the use of an over-age conviction is not so weak that it falls before a finding that the prior conviction was for a crime involving dishonesty." *United States v. Cathey, supra*, 591 F.2d at 276. Second, there are no exceptional circumstances in the present case which would justify the use of these convictions to impeach appellants' credibility. *Id.* at 276–77; *see also* S.Rep.No. 93–1277, *supra*, [1974] U.S.Code Cong. & Ad.News at 7061 ("It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances."). Both appellants had already been impeached by the use of more recent convictions. In addition, the credibility of their defense theory had already been substantially weakened by the testimony of Special Agent Trammell.

We are persuaded, however, that the error was harmless. *See United States v. Mahler, supra*, 579 F.2d at 736; *cf. Grant v. White*, 579 F.2d 48, 49 (8th Cir. 1978) (per curiam) (habeas corpus; impeachment of defendant by reference to juvenile proceedings wherein defendant was not represented by counsel held harmless error). The

government's evidence was very strong and consisted of a tape recorded conversation, a videotape, and the testimony of Gordon and several undercover agents.[12]

## II. *Motion for Judgment of Acquittal*

Both Singer and Wagner next argue that the district court erred in denying their motions for judgment of acquittal on the ground of insufficiency of the evidence. Appellants argue that the government failed to establish specific intent in the face of appellants' testimony that they were acting as informants. We disagree.

Appellate review of a denial of a motion for judgment of acquittal is guided by familiar principles. We must examine the evidence in the light most favorable to the government and must give the government the benefit of all reasonable inferences that may logically be drawn from the evidence. Thus, we have said that "[a] motion for acquittal should be granted only where 'the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged.'"

*United States v. Anziano*, 606 F.2d 242, 244 (8th Cir. 1979) (per curiam) (citations omitted, emphasis in original). We have care-

---

**10.** [T]he ten-year time limit could be conceptualized as a policy statement [by Congress] that if an offender keeps his record unblemished for ten years, he will be presumed to be as truthful as a normal citizen, i. e., that the ten-year period is evidence that the inference supporting use of prior crime impeachment evidence (a lawbreaker is more likely to lie) can no longer be drawn about a certain person.

*Mills v. Estelle, supra*, 552 F.2d at 120.

**11.** *See* H.R.Conf.Rep.No. 93–1597, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7103:

By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

"[I]t is necessary to look at the basis of the conviction to determine whether the crime involved dishonesty rather than merely categorize the offense." *United States v. Cathey, supra*, 591 F.2d at 276 n.16, *citing United States v. Ashley*, 569 F.2d 975, 979 (5th Cir.), *cert. denied*, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978).

**12.** In view of the strength of the government's case and the fact that both appellants had already been impeached by a prior conviction, I think the government could have proved its case without the use of the 1968 convictions. "Discretionary restraint on the part of prosecutors may eliminate appealable issues of convicted defendants; it may also ensure that undue emphasis is not placed on the prior convictions by the jury." *United States v. Mahler*, 579 F.2d 730, 736 n.21 (2d Cir.), *cert. denied*, 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978).

fully reviewed the record and conclude that there was sufficient evidence from which the jury could have found appellants were not acting as informants and instead knowingly or purposely acted in violation of the law.[13] We note that appellants' informants defense primarily depended upon their credibility. "It is elementary that issues of credibility of witnesses are generally for the trier of fact." *United States v. Pugh*, 566 F.2d 626, 628 (8th Cir. 1977) (per curiam), *cert. denied*, 435 U.S. 1010, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978).

### III. *Appellant Wagner*

We now turn to Wagner's individual allegations of error.

*Motion to Dismiss Indictment*

■ Wagner first argues that the district court erred in denying his motion to dismiss the indictment. Wagner argues that the government's attorney improperly submitted a presigned indictment to the grand jury and that such conduct unduly influenced the grand jury's deliberations. Fed. R.Crim.P. 7(c)(1) requires that "[t]he indictment . . . shall be signed by the attorney for the government." "This signature performs the function of attesting to the action of the grand jury. Its execution is intended to show that the attorney for the government joins with the grand jury in instituting the proceeding . . . ." *United States v. Gold*, 470 F.Supp. 1336, 1354–55 (N.D.Ill.1979) (citations omitted).

In our view appellant's objection to the submission of a presigned indictment to the grand jury has some merit. The grand jury must function independently.[14] We strongly suggest that the government's attorneys not present presigned indictments to the grand jury. Such forbearance is consistent with the independent role of the grand jury and may provide criminal defendants with fewer opportunities to attack their indictments on appeal. However, "[i]n the absence of some additional evidence that the prosecutors actually exerted undue influence on the grand jury, the fact that their signatures may have been affixed to the indictment before, rather than after the grand jury's consideration is not significant enough to require dismissal of the indictment." *United States v. Tedesco*, 441 F.Supp. 1336, 1342 (M.D.Pa.1977); *accord, United States v. Frantze*, 655 F.2d 128 at 130 (8th Cir. 1981); *United States v. Levine*, 457 F.2d 1186, 1189 (10th Cir. 1972) (presigned indictment not reversible error where record reveals no undue influence); *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 386 (N.D.Ill.1979); *cf. United States v. Gold, supra*, 470 F.Supp. at 1354–55 (presigned indictment, which was one of many instances of abuse of grand jury, condemned as "a mockery of the grand jury system"). *See also United States v. Cox*, 342 F.2d 167 (5th Cir.) (banc), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

■ Wagner also argues that the government's attorney improperly appeared as a witness before the grand jury by explaining the elements of the offenses to the grand jury.[15] An appearance before the

---

**13.** The district court instructed the jury with respect to specific intent.

**14.** "The very purpose of the requirement that [an individual] be indicted by grand jury is to limit [that individual's] jeopardy to offenses charged by a group of his [or her] fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (footnote omitted).

**15.** On a related point Wagner argues that the district court erred in refusing to disclose the transcript of the grand jury proceedings pursuant to Fed.R.Crim.P. 6(e)(3)(C)(ii). Wagner argues that the failure to disclose prevented him

from properly developing a record with respect to his charges of prosecutorial misconduct before the grand jury. Under the present circumstances, the district court did not err in refusing to order disclosure because, as discussed in the text above, Wagner failed to show that grounds may have existed to dismiss the indictment. When confronted with serious charges of prosecutorial misconduct, it might be a good idea if the district court conducted a preliminary examination *in camera* of the relevant grand jury transcripts and other materials. *See United States v. Roberts*, 481 F.Supp. 1385, 1388 (C.D.Cal.1980); *see also Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).

grand jury by the government's attorney as both a prosecutor and a witness would violate both the *Code of Professional Responsibility* and Fed.R.Crim.P. 6(d). *See United States v. Gold, supra,* 470 F.Supp. at 1351; *United States v. Treadway,* 445 F.Supp. 959, 960–65 (N.D.Tex.1978) (establishing *per se* rule). However, the government's attorney may explain the elements of the offenses under investigation to the grand jury. Such conduct does not make the government's attorney a witness before the grand jury. *Cf. United States v. International Paper Co.,* 457 F.Supp. 571, 576 (S.D. Tex.1978) (prosecutors' presentation of summaries of testimony from massive and complex investigation to the grand jury was not abuse of grand jury; prosecuting attorney serves as "the guiding arm of the grand jury" and is responsible for orderly and intelligible presentation of case).

Wagner also argues that the indictment was multiplicitous and should have been dismissed because it charged him with both conspiracy to commit a substantive offense and the substantive offense.[16] This argument is not well taken. "It is firmly established 'that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.'" *United States v. Clark,* 613 F.2d 391, 400 (2d Cir. 1979), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), *citing Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1181, 90 L.Ed. 1489 (1946).

*Testimony about Revocation of Probation*

Wagner next argues that the district court erred in refusing to permit him to testify about the possible revocation of his probation. Wagner argues that this information was relevant to the issue of motive. Wagner contends that he could not have participated in further criminal activity with the requisite specific intent because he knew that such activity would jeopardize his probation. The government opposed this proffered testimony on the grounds that any reference to revocation of probation was speculative.

Under the circumstances we can find no error in the district court's ruling. The district court permitted Wagner to testify that he was on probation at the time of the offense, that he had employment and insurance problems as a result of his probationary status, and that he was interested in obtaining a pardon. The district court only refused to permit Wagner to testify that his probation would in fact be revoked. The effect of the possibility of revocation of probation on Wagner's motive, lack of specific intent, and good faith belief that he was acting as an informant were presented to the jury during closing arguments.

*Motion for Mistrial*

Wagner next argues that the district court erred in denying his motion for a mistrial on the ground of prosecutorial misconduct.

During the opening statement the government's attorney made the following comment:

> On behalf of the United States, I would like to outline for you briefly and explain for you to give you an edge as you begin to listen to the evidence what the Government will introduce to prove to all of you beyond any doubt the guilt of these three defendants, Singer, Alley, and Wagner.

Wagner argues that this comment was an impermissible expression of the personal belief or opinion of the government's attorney about the guilt of the defendants. We agree that

> [a] personal expression of [a] defendant's culpability, which inserts an extraneous and irrelevant issue before the jury, is particularly objectionable and highly improper when made by the prosecutor, whose position of public trust and experience in criminal trials may induce the jury to accord some unwarranted weight to the comment.

---

16. The government also argues that the indictment did not charge Wagner with conspiracy to commit a substantive offense and commission of the same substantive offense. The government argues that Wagner was charged with conspiracy to *sell* stolen meat and with stealing the meat. We do not reach the government's argument.

*United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976). However, the prosecutorial comment challenged here does not constitute an expression of personal belief in Wagner's guilt. Fairly read, this comment refers to the government's evidence and introduces the government's theory of the case.

Wagner also argues that the government's attorney improperly and prejudicially referred to the defendants as "crooks." Following an objection by defense counsel, the district court ordered the question stricken from the record and cautioned the jury to disregard the question. Under the circumstances we find no basis for reversal. *See id.* at 1134, *citing United States v. Cook*, 432 F.2d 1093, 1106–07 (7th Cir. 1970), *cert. denied*, 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971), *and United States v. Hoffman*, 415 F.2d 14, 21 (7th Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). However, we emphasize that the remarks are clearly improper, *Hall v. United States*, 419 F.2d 582, 587 (5th Cir. 1969), and prosecutors must avoid this type of characterization of criminal defendants. *United States v. Splain, supra*, 545 F.2d at 1134.[17]

Wagner similarly argues that the government's attorney improperly asked two questions containing the words "crimes" and "theft." We agree that the government's attorney should have used more neutral words in framing these questions. However, we find no grounds for reversal. The district court instructed the jury to disregard the "crimes" question and answer. With respect to the "theft" question, the district court initially overruled defense objections but then later offered to

give a cautionary instruction to the jury. Defense counsel declined, stating that counsel did not believe the reference caused any prejudice and would prefer not to call the attention of the jury to the reference. Under the circumstances Wagner has no grounds for complaint.

Wagner next argues that, in response to the government's attorney's question "Would you tell the members of the jury whether or not you carry a gun?", witness Gordon answered that he carried a gun for self-protection and because he was afraid. Under the circumstances the district court did not err in refusing to grant a mistrial. First, the witness's answer was volunteered, not solicited by the government. The government did not exploit the answer and advised the witness to avoid that type of answer in the future. Second, following defense objections, the district court promptly informed the jury that there had been no evidence of threats against the witness in the case and instructed the jury to disregard the answer. *Cf. United States v. Vitale*, 549 F.2d 71, 72–73 (8th Cir.) (per curiam) (other crimes), *cert. denied*, 431 U.S. 907, 97 S.Ct. 1704, 52 L.Ed.2d 393 (1977); *United States v. Splain, supra*, 545 F.2d at 1133 (other crimes).

Wagner next argues that the government's attorney during closing arguments improperly expressed her personal opinion of the defendants' credibility[18] and made two references about Wagner's statements to the FBI which were not supported by the record.[19] With respect to the reference to the defendants' credibility, we agree that this remark comes perilously close to an expression of personal opinion. However, as noted by the district court, such remarks

---

17. This type of shorthand characterization of an accused, not based on evidence, is especially likely to stick in the minds of the jury and influence its deliberations. Out of the usual welter of grey facts it starkly rises— succinct, pithy, colorful, and expressed in a sharp break with the decorum which the citizen expects from the representative of his government.

*Hall v. United States*, 419 F.2d 582, 587 (5th Cir. 1969) (description of defendant as a "hoodlum").

18. The government's attorney stated in closing argument: "I submit you can't believe a thing they told you because of their credibility."

19. The government's attorney inaccurately stated that Wagner told Special Agent Trammell "I want to help the FBI in the future" and "I don't know nothing about the March 23 incident."

by both sides were not uncommon in this trial. The district court cautioned the government's attorney about the choice of words and had earlier instructed the jury that closing arguments only provided an opportunity for argument by counsel and were not evidence.

When reviewed in the context of the entire trial, we are satisfied that the remark does not warrant reversal. *See United States v. Dawkins*, 562 F.2d 567, 568 (8th Cir. 1977) (per curiam), *citing United States v. Chrisco*, 493 F.2d 232, 238 (8th Cir.), *cert. denied*, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). In view of the conflicting testimony about the defendants' status as informants, some attack upon their credibility was justified. *See United States v. Franklin*, 568 F.2d 1156, 1158 (8th Cir.), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978). The government's attorney made this remark during the course of a closing argument in which she repeatedly emphasized the jury was the final judge of the credibility of the witnesses. We are persuaded that under the circumstances this remark "did not carry an inference of outside knowledge or ask the jurors to rely on the prosecutor's own credibility." *Id.* at 1159, *citing United States v. Dawkins, supra*, 562 F.2d at 569.

We find more troublesome the allegations that the government's attorney inaccurately repeated statements allegedly made by Wagner to the FBI. We do not accept the government's argument that these statements were in effect reasonably drawn inferences based upon Wagner's apparent lack of cooperation with the FBI in the past or at the time of the events in question. The statements were not clearly presented as argument only but were referred to as statements made by Wagner. The government must carefully review the accuracy of statements of this kind before attributing them to a particular witness.

Nonetheless, we do not find that the district court abused its discretion in denying the motion for mistrial. Each time the references were made and objected to by defense counsel, the district court cautioned the jury to recall the testimony of the witness. The jury had been instructed earlier

that the closing arguments were not evidence. Under the circumstances the district court's admonitions to the jury were sufficient. *Cf. United States v. Miranda*, 556 F.2d 877, 879–80 (8th Cir. 1977) (government attorney in rebuttal argument improperly read from portions of transcripts of tape recordings; transcripts were not in evidence; cautionary instructions given).

We are concerned about the cumulative effect of the improper statements and questions of the prosecutor and affirm only because of the very strong case against the defendant and the prompt cautionary actions taken by the district judge. In affirming, we repeat the admonition of Mr. Justice Sutherland in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Motion for Severance*

Wagner next argues that the district court erred in denying his motion for severance. Wagner argues that his theory of defense was inconsistent with that of his codefendant Alley, coconspirators' statements were improperly admitted, and the evidence against his codefendants was "far more damaging" than the evidence against him. These are familiar severance arguments.

It is the general rule that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts. Severance will be allowed upon a showing of real prejudice to an individual defendant. However, the motion to sever [under Fed. R.Crim.P. 14] is addressed to the discretion of the trial court, and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. A defendant must show something more than the mere fact that his [or her] chances for acquittal would have been better had [the defendant] been tried separately. [The defendant] must "affirmatively demonstrate that the joint trial prejudiced [his] [or her] right to a fair trial." Thus, before the refusal to sever may be deemed an abuse of discretion on the part of the trial court, prejudice to a defendant's right to a fair trial must be established.

*United States v. Jackson,* 549 F.2d 517, 523–24 (8th Cir.) (citations omitted), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); *see United States v. Knife,* 592 F.2d 472, 480–81 (8th Cir. 1979); *United States v. Martinez,* 573 F.2d 529, 532–33 (8th Cir. 1978).

First, Wagner argues that his defense was antagonistic to that of his codefendant Alley. Alley's defense theory was intoxication. Even assuming that Wagner's and Alley's defense theories were antagonistic, Wagner failed to show any prejudice to his defense. "In order to demonstrate an abuse of discretion, defendants must show more than the fact that co-defendants whose strategies were generally antagonistic were tried together." *United States v. Jackson, supra,* 549 F.2d at 525 n.6. The

district court did not abuse its discretion in denying the motion for severance on this ground.

■ Wagner next argues that the district court should have granted his motion to sever because several statements made by Alley and Singer were erroneously admitted as coconspirators' statements during their joint trial. Sam Jordan, general manager of Allied Transportation, testified on redirect examination that Alley called him about 5:45 a. m. Monday, March 24, and reported that his truck was missing and that he had no idea what had happened to it. Jordan also testified that Singer called him about 8:30 a. m. that morning and reported that he had taken the truck out for a test drive, had stopped at a local motel for a cup of coffee, and had been approached by two men who "hijacked" the truck. Jordan further testified that he talked to Alley on Tuesday, March 25.[20] Jordan also testified that neither Alley nor Singer told him that they were working for the FBI or the police.[21]

The district court did not err in admitting into evidence Jordan's testimony about Alley's and Singer's telephone calls on the morning of Monday, March 24. These telephone conversations were properly admissible as coconspirators' statements. *See, e. g., United States v. Williams,* 604 F.2d 1102, 1112–13 (8th Cir. 1979). Contrary to Wagner's argument, even though these calls were made the day *after* the events in question, the calls were admissible as "acts of concealment done in furtherance of the *main* criminal conspiracy." *Grunewald v. United States,* 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957) (emphasis in original).

---

**20.** Jordan did not testify about the substance of his second conversation with Alley. Following a bench conference, the government's attorney pursued another line of questioning. The district court had earlier instructed the jury that the second conversation was only being received as to Alley.

**21.** Wagner also challenges the admissibility of Special Agent Trammell's testimony that Singer wanted to know if Trammell could help him

with the charges in the present case. Defense counsel did not object to this testimony. (Tr. III at 54). Defense counsel did challenge the government's attorney's next question about communications between the FBI and the U.S. Attorney's office. The district court sustained the objection and the question was stricken from the record. The district court further instructed the jury that this question had nothing to do with the issues in the case and directed them to disregard the question.

■ Wagner further argues that his sixth amendment right to confrontation was violated by the admission into evidence of Alley's extrajudicial statements under the coconspirator exception. Unlike Singer, Alley did not testify at trial. We distinguish *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), cited by Wagner, because Alley's statements were properly admitted as coconspirators' statements. In the case of a confrontation clause challenge to evidence admitted under an exception to the hearsay rules, this court follows a case-by-case analysis. *See, e. g., United States v. Scholle*, 553 F.2d 1109, 1119–20 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). We find that the admission of Alley's statements did not violate Wagner's confrontation rights. The statements were made during telephone calls voluntarily made by the declarant. The statements were damaging because they were consistent with the government's theory of the case; however, the statements were not critical to the government's case in light of other strong evidence of guilt. Jordan was cross-examined; the jury was able to weigh his credibility as a witness. Finally, the district court gave appropriate cautionary instructions to the jury.

Having concluded that Alley's and Singer's statements were properly admissible as coconspirators' statements and did not violate the confrontation clause, the district court did not abuse its discretion in denying Wagner's motion for severance on that ground.

Last, Wagner argues that the district court should have granted a severance because the evidence against his codefendants was "far more damaging" than the evidence against him. Wagner stresses that the Monday morning telephone calls made by Alley and Singer were particularly damaging and characterizes these calls as false exculpatory statements.

We find no abuse of discretion in the district court's denial of the motion for severance on this ground.

The preference for joint trials of defendants jointly indicted, particularly where conspiracy is charged, is not limited by any requirement that the quantum of evidence of each defendant's culpability be equal. It is indeed hard to imagine a multiple defendant case in which the evidence against individual defendants is either quantitatively or qualitatively equivalent. A defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than the evidence against him [or her]. Severance becomes necessary where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants.

*United States v. Jackson, supra*, 549 F.2d at 525 (citations omitted); *see United States v. Knife, supra*, 592 F.2d at 480. Despite the length of the trial (and this opinion), this was a relatively straightforward case. The government's evidence was not unduly complex or confusing. The principal questions at trial involved the credibility of the witnesses. Each defendant was represented by his own counsel. The district court instructed the jury to consider the evidence against each defendant separately. Even if we accept Wagner's evaluation of the relative strengths of the evidence against each defendant, that factor would not alone warrant a severance. *See United States v. Jackson, supra*, 549 F.2d at 526.

*Motion for Judgment of Acquittal*

■ Wagner next argues that the district court erred in denying his motion for judgment of acquittal on the ground that the government failed to establish an essential element of the offense charged in each count. Wagner first argues that the government "manufactured" the requisite interstate commerce element under 18 U.S.C. § 2315 (count I) by deliberately changing the place of delivery from Olathe, Kansas, to Kansas City, Missouri. *See* note 3 *supra*. The district court rejected this challenge. We cannot say that this finding is clearly erroneous. Moreover, the record

indicates that the beef was in transit from Kansas to Massachusetts; this fact was established by bills of lading and shipment invoices. Under the circumstances it is clear that the beef was moving in interstate commerce. *See United States v. Thies*, 569 F.2d 1268, 1272–73 (3d Cir. 1978) (18 U.S.C. § 2315); *cf. United States v. Garber*, 626 F.2d 1144, 1147–52 (3d Cir. 1980) (18 U.S.C. § 659), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981);[22] *United States v. Franklin, supra*, 568 F.2d at 1157 (18 U.S.C. § 659).

■ Wagner next argues that the government's evidence failed to show that the defendants removed the beef from the trailer. Wagner argues that the district court should have granted his motion for acquittal under count II because 18 U.S.C. § 659 requires *removal* of the goods in question from the vehicle. We must disagree.

In the phrase "did steal, take, and carry away from a motor truck,"[23] the indictment was tracking the language of the statute, 18 U.S.C. § 659. While penal

statutes are to be strictly construed, the courts are not required to abandon common sense. The purpose of 18 U.S.C. § 659 is to protect interstate shipments. Stealing the truck with its contents is most certainly violative of the statute which proscribes theft of the contents.

*United States v. Green*, 446 F.2d 1169, 1173 (5th Cir. 1971) (citations omitted); *see United States v. Padilla*, 374 F.2d 782, 784–85 (2d Cir. 1967).

*Nondisclosure of* Brady *Materials*

■ Wagner next argues that the district court erred in denying his request for disclosure of certain exculpatory materials under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Wagner sought information about government witness Gordon and the beginning of the undercover investigation. The government opposed disclosure. The district court examined the documents *in camera* and denied the disclosure request, noting that the documents largely involved ongoing FBI investigations and contained nothing pertinent to Wagner's defense theory. We have

---

**22.** Without question, a conviction under [18 U.S.C.] § 659 can only be sustained if there is evidence that the stolen items were goods "moving as or which are a part of or which constitute an interstate or foreign shipment of freight." There is no requirement of literal movement; goods which are part of or constitute an interstate or foreign shipment are covered by the statute even if not in motion at the time of the theft. The test for determining whether goods are part of an interstate or foreign shipment is a practical one based on common sense and administered on an ad hoc basis. In order to make this determination, courts look to a variety of factors, such as the relationship between the consignee, consignor, and carrier; the indicia of interstate or foreign commerce at the time of the theft; and the preservation of the congressional intent in enacting this statute. The delivery of goods to a carrier before the theft occurred, if applicable, and the physical location of the shipment when stolen are important considerations, but no one factor is conclusive. Rather, each case must be evaluated on its own particular facts, recognizing that § 659 was designed to promote the flow of goods in interstate and foreign commerce, and that "the carrying out of this purpose is

not to be hampered by technical legal conceptions."

*United States v. Garber*, 626 F.2d 1144, 1147 (3d Cir. 1980) (18 U.S.C. § 659) (footnote and citations omitted), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981).

The interstate commerce provision in 18 U.S.C. § 2315 is almost the same as that in 18 U.S.C. § 659. 18 U.S.C. § 2315 provides in part:

> Whoever . . . sells, or disposes of any goods, . . . of the value of $5,000 or more, . . . moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken; . . .
>
> . . . .
>
> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**23.** The indictment in the present case contained the phrase "stole, embezzled, took and carried away from a vehicle, that is, a trailer owned by Allied Transportation Incorporated, goods of a value in excess of $100.00, that is, approximately 38,000 pounds of hanging beef carcasses."

reviewed the documents in question and agree with the district court's assessment. The district court did not abuse its discretion in denying Wagner's request for disclosure. *See United States v. Washington*, 150 U.S.App.D.C. 68, 463 F.2d 904, 905–06 (1972) (per curiam).

Accordingly, the judgments of the district court are affirmed.

STEPHENSON, Circuit Judge, concurring.

I concur in the majority opinion except with respect to its holding that the district court abused its discretion in permitting the government to impeach appellants with 1968 convictions (twelve years old), although holding the same was harmless error. *See* majority opinion at 1299–1301. It is my view that the convictions were properly admitted. The record supports the district court's finding that the probative value of the convictions under the facts of this case outweighed the prejudicial effect. *See United States v. Spero*, 625 F.2d 779 (8th Cir. 1980); *United States v. Little*, 567 F.2d 346 (8th Cir.), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1977). The credibility of both appellants was important. Both claimed they had no intent or purpose to violate the law but were, in substance, gathering information for the government. Furthermore, neither appellant could rely on the presumption that an unblemished record for ten years carried an inference that they had been rehabilitated. *See* majority opinion at 1301, n.10. Evidence was received indicating each appellant had been convicted of another felony within ten years of the instant offense.